JL

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Bryson Moore,

Plaintiff,

v.

Diego Machado, et al.,

Defendants.

No.    CV-26-01475-PHX-JAT (DMF)

ORDER

I.    Procedural History

Plaintiff Bryson Moore, who is confined in the Arizona State Prison Complex (ASPC)-Lewis and is represented by counsel, originally filed a Complaint in the Superior Court of Pima County, Arizona, against the State of Arizona and Diego Machado.  On August 12, 2025, Plaintiff filed a First Amended Complaint.  On August 26, 2025, the State answered the First Amended Complaint.  Subsequently, the case was transferred to the Maricopa County Superior Court.  On November 14, 2025, Defendant Machado filed a Notice of Removal and removed the case to this Court. *Moore v. Machado*, CV-25-04281-PHX-JAT (DMF) (Doc. 1).  In a December 9, 2025 Order, the Court dismissed the Eighth Amendment claim against Defendant Machado and remanded the state-law claims to the Maricopa County Superior Court. *Id.* (Doc. 8.)

On February 26, 2026, Plaintiff filed a Second Amended Complaint in the state court. On March 2, 2026, Defendant Machado filed a Notice of Removal and removed the case to this Court.  (Doc. 1.)

TERMPSREF

**II.    Removal**

A state court defendant may remove to federal court any civil action brought in the state court over which the federal district courts would have original jurisdiction. 28 U.S.C. § 1441(a). In his Second Amended Complaint, Plaintiff alleges, among other things, that Defendant Machado violated his Eighth Amendment rights. This Court's jurisdiction extends to such claims. *See* 28 U.S.C. § 1331 (a federal court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States"). The Notice of Removal was filed within 30 days of service of the Second Amended Complaint. Defendant Machado states that the State of Arizona consents to removal. It therefore appears this case was timely and properly removed.

**III.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for

relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

**IV.    Second Amended Complaint**

In his three-count Second Amended Complaint, Plaintiff sues the State of Arizona and Correctional Officer II Diego Machado.  (Doc. 1-4 at 1.)  Plaintiff asserts an Eighth Amendment claim under 42 U.S.C. § 1983 and related state-law claims.

Plaintiff alleges the following:

Plaintiff is a prisoner in the Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR).  (*Id.* ¶ 1.)  On October 24, 2024, Plaintiff was housed alone in a cell in a close custody unit at ASPC–Tucson, Cimarron Unit.  (*Id.* ¶ 10.)  ADCRR regulations prohibit close custody prisoners from entering other close custody prisoners' cells and prohibit officers from unlocking cell doors for the purpose of granting prisoners access to other prisoners' cells.  (*Id.* ¶¶ 11-12.)

At approximately 8:00 p.m., while Plaintiff was asleep in his cell, Defendant Machado unlocked the door to Plaintiff's cell and allowed two prisoners to enter the cell, although the prisoners were not assigned to live in that cell, in violation of Machado's training and ADCRR rules, regulations, policies, procedures, and orders.  (*Id.* ¶ 13.)  The prisoners had told Machado they wanted to roll cigarettes with Plaintiff.  (*Id.* ¶ 14.) According to Plaintiff, this was a "pretext" for gaining access to Plaintiff himself, because Plaintiff's cell door had a food-trap that could be used to pass tobacco products and cigarettes back and forth.  (*Id.* ¶ 15.)  Previously, Machado had used the food-trap in the cell door to pass food and other materials to Plaintiff without the need to open Plaintiff's cell door.  (*Id.* ¶ 16.)

Once inside Plaintiff's cell, the two unidentified prisoners assaulted Plaintiff, fracturing his jaw and causing him to suffer extensive and visible facial trauma and "serious medical needs."  (*Id.* ¶ 18.)  The prisoners then left Plaintiff's cell, and Plaintiff crawled

into the hallway, reported the incident to Defendant Machado, and requested medical help. (*Id.* ¶ 19.)  Defendant Machado told Plaintiff, "give me a minute." (*Id.* ¶ 20.)  Defendant Machado's work shift ended, and he left the ADCRR premises without providing or seeking medical attention for Plaintiff, without activating an Incident Command System (ICS), and without notifying his colleagues, supervisor(s) or ADCRR medical personnel about Plaintiff's injuries.  (*Id.* ¶ 24.)

Plaintiff was left untreated for approximately 90 minutes until a correctional officer on the next shift "discovered Plaintiff's peril" and activated an ICS.  (*Id.* ¶ 25.)  Plaintiff was transported to St. Mary's Hospital, and then to St. Joseph's Hospital, where he was diagnosed with a left mandibular condyle fracture and a right mandibular angle fracture. (*Id.* ¶ 26.)  Plaintiff underwent open reduction and internal fixation jaw surgery with his jaw being wired shut and metal jaw locks being placed.  (*Id.* ¶ 27.)  Plaintiff endured significant post-operative complications, was "forced to endure a full liquid diet," and sustained weight loss, persistent pain, infection, and a retained fixation screw for which he had to undergo another surgical procedure to have the screw removed.  (*Id.* ¶¶ 28-29.)  Plaintiff also experienced profound emotional distress, including fear of repeated attacks and psychological trauma associated with his restricted speech and swallowing ability resulting from the wiring shut and locking of his jaw.  (*Id.* ¶ 30.)

ADCRR initiated an investigation of the assault.  (*Id.* ¶ 31.)  During his investigative interview, Defendant Machado admitted that his actions had been "improper." (*Id.* ¶ 32.) Machado failed to provide the investigator with a rationale for his failure to render aid to Plaintiff, and he ultimately told the investigator, "I fucked up."  (*Id.*)

Plaintiff contends Defendant Machado had received training and instruction about close custody prisoners being housed alone and about not letting prisoners into cells they were not assigned to, but Machado "purposefully, deliberately, willfully, recklessly and cruelly failed to follow his training and instead provided access for other inmates into Plaintiff's cell."  (*Id.* ¶ 22.)  Plaintiff alleges that Machado ignored Plaintiff's obvious and visible serious medical needs and refused to provide or summon aid for Plaintiff.  (*Id.* ¶

20.) Plaintiff asserts that his untreated injuries were likely to, and in fact did, result in further significant injury and the unnecessary and wanton infliction of pain. (*Id.* ¶ 21.) Plaintiff further alleges that Machado had received training and instruction about activating ADCRR's ICS for inmate medical emergencies, but he "purposefully, deliberately, willfully, recklessly and cruelly failed and refused to activate the ICS or otherwise provide or summon medical assistance for Plaintiff." (*Id.* ¶ 23.)

In Count One, Plaintiff asserts a negligence/gross negligence claim against Defendant Machado. (*Id.* at 5-6.) In Count Two, Plaintiff asserts a vicarious liability claim for gross negligence against the State of Arizona. (*Id.* at 6-7.)

In Count Three, Plaintiff asserts an Eighth Amendment claim under § 1983 against Defendant Machado. Plaintiff alleges that Machado "had actual knowledge of a substantial risk of serious harm to Plaintiff when he chose to unlock Plaintiff's cell door to admit two unauthorized inmates." (*Id.* ¶ 47.) Plaintiff asserts that Machado knew he could "facilitate the exchange of cigarettes between Plaintiff and the other inmates by directing the inmates to use the food-trap in Plaintiff's cell without opening the door to Plaintiff's cell" and knew he could "protect Plaintiff from being assaulted by having the other inmates exchange tobacco and cigarettes with Plaintiff through the food-trap door." (*Id.* ¶¶ 50-51.) Plaintiff claims Machado "intentionally ignored and disregarded all risks to Plaintiff when he unlocked Plaintiff's door, allowed the other inmates to enter, and walked away, leaving Plaintiff alone and unprotected with the other inmates." (*Id.* ¶ 52.) Plaintiff contends that by unlocking his door and leaving him alone with the two prisoners, and by allowing prisoners access to another prisoner's cell, "Machado knowingly exposed Plaintiff to an obvious and [] substantial risk of inmate-on-inmate assault." (*Id.* ¶¶ 53-54.) Plaintiff alleges that Machado "consciously and intentionally disregarded that risk by allowing the inmates into Plaintiff's cell, by failing to remain at Plaintiff's cell while the other inmates were inside, failing to supervise the interaction between Plaintiff and the two other inmates, failing to order the inmates out of Plaintiff's cell, failing to remove the inmates from Plaintiff's cell, or otherwise failing to take reasonable action to protect Plaintiff." (*Id.* ¶

55.)

Plaintiff further alleges that when he requested immediate medical care and activation of the ICS, he had "objectively serious medical needs, including extensive facial trauma, active bleeding, swelling, a visibly misaligned jaw, and severe pain." (*Id.* ¶ 60.) Plaintiff asserts that Defendant Machado subjectively recognized Plaintiff's serious medical needs because he "saw Plaintiff's condition face-to-face, heard Plaintiff's plea for help, and understood the obvious need for Plaintiff to receive prompt medical attention. (*Id.* ¶ 61.) Plaintiff claims Machado nevertheless "intentionally and deliberately refused and delayed summoning medical assistance, told Plaintiff, 'give me a minute,' and walked away without activating ICS or contacting medical staff." (*Id.* ¶ 62.) Plaintiff contends that Machado knew that by failing to initiate the ICS or summon medical assistance, Plaintiff faced a substantial risk of continued and increased bleeding, infection, further or unrepairable misalignment of his jaw, and additional pain and suffering. (*Id.* ¶ 64.) Plaintiff alleges that Machado left the facility at the end of his shift without securing medical attention for Plaintiff or alerting other correctional officers about Plaintiff's condition, thereby "[w]illfully, intentionally, deliberately and recklessly [dis]regarding" the risks to Plaintiff. (*Id.* ¶ 65.)

Plaintiff asserts that as a direct and proximate result of Defendant Machado's intentional and deliberate delay, Plaintiff remained untreated for approximately 90 minutes before another officer discovered Plaintiff's condition and activated the ICS. (*Id.* ¶ 68.) Plaintiff claims that during the delay, he continued to bleed and swell, experienced severe and escalating pain, and his jaw remained unstable and misaligned. (*Id.* ¶ 69.) Plaintiff alleges the delay worsened the displacement/malalignment of his fractures, increased swelling, and left open facial wounds untreated, thereby increasing the risk of infection and complications. (*Id.* ¶ 70.) Plaintiff contends he suffered infection and hardware-related complications requiring additional surgical intervention, consistent with the foreseeable risks of delaying prompt evaluation and treatment of facial trauma. (*Id.* ¶ 71.)

**V.     Discussion of Second Amended Complaint**

**A.     Section 1983 Claims**

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

**1.     Failure to Protect**

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners because being assaulted in prison "is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 832–34 (1994); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009). To state a failure-to-protect claim, a plaintiff must allege that: (1) the deprivation was, objectively, sufficiently serious, and (2) the official was, subjectively, deliberately indifferent to the prisoner's safety or acted with "a sufficiently culpable state of mind." *Farmer*, 511 US at 834; *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (internal citation omitted).

Under the objective prong, "[w]hat is necessary to show sufficient harm for the purposes of the Cruel and Unusual Punishment Clause depends on the claim at issue." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). For a failure-to-protect claim, the prisoner must show that he was placed in conditions that posed a substantial risk of serious harm. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

Under the subjective prong, the requisite state of mind is "deliberate indifference." *See Farmer*, 511 U.S. at 834. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. "Neither negligence nor

gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corrs.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002). A plaintiff must allege facts to support that the official knew of and disregarded an excessive risk to prisoner safety. *Farmer*, 511 U.S. at 837. To satisfy the knowledge component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Although deliberate indifference "does not require that the [prison] official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault," it does require that the official "have more than a mere suspicion that the attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted).

In addition, a plaintiff alleging deliberate indifference must "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

Plaintiff's allegations do not support that Defendant Machado was aware of and disregarded a substantial risk of serious harm to Plaintiff before Machado allowed the two prisoners to enter Plaintiff's cell. Plaintiff alleges that Machado should have known the reason the prisoners gave for wanting to enter Plaintiff's cell was a pretext because the prisoners could have passed rolled cigarettes and tobacco through the trap-door in Plaintiff's cell, and from that, Machado should have inferred that the prisoners intended to assault Plaintiff. Even if Machado knew or should have known the reason the prisoners gave for wanting to enter Plaintiff's cell was a pretext, the Court cannot infer that Machado therefore had a reason to believe those particular prisoners posed any threat to Plaintiff, and generalized safety concerns with respect to all close custody prisoners cannot support

TERMPSREF

- 8 -

Machado's personal liability for failing to protect Plaintiff from assault. Even if Machado was negligent or grossly negligent, that is insufficient to state an Eighth Amendment claim. And even if Machado violated ADCRR training or policy, that does not amount to a constitutional violation. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (departmental regulations do not establish a federal constitutional violation) (emphasis in original).

### 2. Failure to Obtain Medical Care

To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Plaintiff adequately states an Eighth Amendment claim against Defendant Machado based on Machado's failure to obtain medical assistance for Plaintiff. The Court will require Machado to answer this portion of Count Three.

### B. State-Law Claims

The Court will require Defendant Machado to answer the negligence/gross negligence claim in Count One and require the State of Arizona to answer the vicarious

liability claim in Count Two.

**IT IS ORDERED:**

(1)     The failure-to-protect claim against Defendant Machado in Count Three of the Second Amended Complaint (Doc. 1-4) is **dismissed without prejudice**.

(2)     Defendant Machado **must answer** the negligence/gross negligence claim in Count One and the Eighth Amendment claim in Count Three for failure to obtain medical assistance for Plaintiff.  The State of Arizona **must answer** the vicarious liability claim in Count Two.

(3)     Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(4)     This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 10th day of April, 2026.

James A. Teilborg
Senior United States District Judge

TERMPSREF